## UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

———————————————

JANICE HISER,

        Plaintiff,

v.                                Case No. 1:09-CV-780

GRAND LEDGE PUBLIC              HON. GORDON J. QUIST
SCHOOLS,

        Defendant.

———————————————/

## **OPINION**

      Plaintiff, Janice Hiser ("Hiser"), has sued her employer, Grand Ledge Public Schools ("GLPS"), alleging claims of sex discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*, and the Michigan Elliott-Larsen Civil Rights Act ("Elliott-Larsen Act"), M.C.L. § 37.2101, *et seq.*, and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the Elliott-Larsen Act. GLPS has moved for summary judgment. Having reviewed the parties' motions, briefs, and supporting exhibits, and having heard oral argument, the Court finds that the matter is now ready for decision. For the reasons set forth below, the Court will grant the motion on all of Hiser's claims.

### I. FACTS

      Hiser is employed by GLPS as an elementary teacher. Since joining GLPS in 1986, Hiser has taught solely at Wacousta Elementary School and has spent most of that time working as a reading specialist. (Hiser Dep. at 39.) Over time, Hiser expressed her ambition to become a principal at one of the GLPS elementary schools. GLPS administrators, including Dr. Kathleen Peasley ("Peasley"), GLPS's Assistant Superintendent for Academic Services, and Dan Davis

("Davis"), GLPS's Assistant Superintendent for Human Resources, encouraged Hiser and expressed their hope that she would eventually obtain a principalship within the district. For example, at the end of the 2005-2006 school year, Peasley told Hiser she was disappointed that a particular situation did not work out: "I am sorry we ended up moving Ed Armstrong to Neff and reducing a principal. I would really like to have seen you as the principal of Neff. It would have been an excellent fit." (E-mail from Peasley to Hiser of 6/8/06, Def.'s Br. Supp. Ex. 1.) Peasley further said, "I believe there will be an opportunity for you in the next 2 years or so." (*Id.*) The following year, Peasley told Hiser, "I had hoped there might be an elementary position open here for you this year, but it appears it will be one more year. I hope we don't lose you to another district before that happens!!!" (E-mail from Peasley to Hiser of 3/14/07, Def.'s Br. Supp. Ex. 1.) Davis similarly encouraged Hiser, noting, "I am very interested in your candidacy and think you would do a great job as a principal." (E-mail from Davis to Hiser of 3/22/07, Def.'s Br. Supp. Ex. 1.)

GLPS supported Hiser's ambition by providing her opportunities for training and experience in serving as a principal. In 2007, Davis arranged for Hiser to attend the Emerging Leaders Program at Michigan State University, a three-day conference designed to assist aspiring principals. Davis sent Hiser to the conference to obtain training and insight toward her goal because she had not performed well in a previous interview during the 2003-2004 school year for the Delta Center Elementary principal position. (Davis Dep. at 145-148.) Hiser had opportunities to obtain practical experience as well, including serving as a "principal designee" – the person designated to address day-to-day issues and perform administrative duties in the principal's absence – and serving as the acting principal of Wacousta Elementary School for one month during 2007.[1] (Hiser Resume, Pl.'s Resp. Br. Ex. 2.)

---

[1] The principal designee retains his or her full-time teaching responsibilities while serving in that role and receives no additional compensation. (Davis Aff. ¶¶ 4, 5, Def.'s Br. Supp. Ex. 5; Hiser Dep. at 14-15, 47, Pl.'s Resp. Br. Ex. 1.)

In May 2008, the Wacousta Elementary School Principal, Bill Thorson, informed Davis that he planned to retire in January 2009. Shortly thereafter, Thorson recommended to Davis that Hiser be appointed his successor. (Davis Aff. ¶ 6, Def.'s Br. Supp. Ex. 5.) Although he had no say in the matter, Thorson also lead Hiser to believe that she would be appointed to his position. (Hiser Dep. at 94-95.) Around the same time, Hiser met with Peasley, who was then serving as the Acting Superintendent, and Davis to discuss Hiser's future with the district and her interest in the Wacousta Elementary principalship. During the meeting, Davis and/or Peasley told Hiser that the position would be posted and invited Hiser to apply. (Peasley Dep. at 50-51; Hiser Dep. at 91-92.) Surprised by this news, Hiser disclosed that she expected to be appointed principal based on Peasley's supportive e-mails and similar e-mails from Marsha Wells, the district's former Superintendent, as well as prior conversations with Wells and Thorson. (Peasley Dep. at 51-52; Hiser Dep. at 92-93.) However, Davis and Dr. Peasley confirmed that the position would be posted.

GLPS posted the position in September 2008, anticipating that interviews would held in October and November 2008 and a candidate hired by December 8, 2008. Hiser and approximately twenty other applicants applied for the position. After reviewing the resumes and obtaining input from Dr. Steven Matthews ("Matthews"), the district's recently-hired Superintendent, regarding the attributes he desired in his first administrative hire, Davis and Peasley identified approximately 10 applicants, including Hiser, as potential candidates. (E-mail from Davis to Administrative Screening Group (undated), Pl.'s Resp. Br. Ex. 13; Davis Dep. at 51-53.) On October 24, Davis and Peasley presented the applicants' materials to an administrative screening committee for review.[2] After discussing the applicants, the committee determined that the applicant group did not include enough strong candidates to proceed with interviews. (Davis Dep. at 58-59.) Specifically, the group lacked "[a] large number of sitting successful elementary principals wishing to go on to another district that

---

[2]The screening committee consisted primarily of elementary principals. (Davis Dep. at 50.)

may be a little bigger or they see as an improvement in where they are at as principal." (*Id.* at 61.)
The committee therefore recommended that the position be reposted to obtain a broader and deeper
pool of candidates and that the position be filled on an interim basis with an outside hire. (*Id.* at 58-
59.) Davis and Peasley thereafter presented the recommendation to Matthews, and after additional
consideration, they decided to repost the position, with the successful candidate to start at the
beginning of the next school year, and to proceed to look for an interim principal. (*Id.* at 61-63.)

After the decision was made, Davis met with Hiser to explain the reasons for reposting the
position. (Hiser Dep. at 116-117.) Davis informed Hiser that she was among eight candidates of
interest in the applicant pool and told her "we want you to be part of that process" when the position
was reposted. (*Id.* at 118.) Matthews also met with Hiser to address the decision and her concerns.
He explained "that those eight candidates were qualified and that . . . the process was very important
and that he liked to interview ten candidates." (*Id.* at 132-33.) Matthews also encouraged Hiser to
reapply when the position was reposted. (Matthews Dep. at 94.)

GLPS administrators moved forward with the plan and sought an interim principal. Initially,
Davis and Peasley identified four female candidates, two of whom were either unavailable or not
interested. (Davis Dep. at 94.) One of the remaining two was a retired GLPS elementary principal
and the other was an elementary principal in another district. (*Id.* at 94-95.) An interim was never
hired, however, and the position was never reposted because by late 2008, GLPS was in a severe
budget crisis, prompting the district's chief financial officer, J. Thomas Goodwin, to prepare a list
of 21 cost-saving recommendations. (Goodwin Aff. ¶ 3 & Attach. 2, Def.'s Br. Supp. Ex. 14.)

One recommendation called for eliminating the assistant principal position at Beagle Middle
School and filling the Wacousta Elementary principal position with an existing administrator, which
would ensure that "[n]o current building administrators will lose their position." (*Id.* Attach. 2 at
3.) GLPS administrators adopted this recommendation in late November or early December 2008.

(Davis Dep. at 96-97.)  The measure was implemented by "shuffling" administrators.  The Beagle Assistant Principal was moved to Assistant Principal of Hayes Middle School and the Assistant Principal of Hayes Middle School became the Principal of that school.  Then, due to performance issues, the current Principal of Hayes Middle School was transferred to the High School as Assistant Principal.  Finally, Scott Eckhart ("Eckhart"), the Assistant Principal at the High School, became the Wacousta Elementary Principal.  (Matthews Dep. at 47-48, 162.)  Eckhart, who had been hired at the beginning of the year as Interim High School Assistant Principal, was the least senior member of the administrative staff and would have been laid off pursuant to the administrators' collective bargaining agreement had he not been transferred to Wacousta Elementary.  (*Id.* at 39.)  Although Eckhart did not have previous experience as an elementary school principal, he had a master's degree in general educational administration and several years experience as a principal and assistant principal at the middle and high school levels.  (Eckhart Resume, Def.'s Br. Supp. Ex. 15.)  The decision to eliminate an administrative position and fill the Wacousta Elementary position with an existing administrator was one of many cost-saving measures that GLPS adopted, resulting in a $4 million reduction in the GLPS budget.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56.  Material facts are facts which are defined by substantive law and are necessary to apply the law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).  A dispute is genuine if a reasonable jury could return judgment for the non-moving party.  *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th

Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. DISCUSSION

As noted above, Hiser brings sex and age discrimination under Title VII and the ADEA, as well as the Elliott-Larsen Act. Because Elliott-Larsen Act claims are analyzed in the same manner and using the same standards as those brought under Title VII and the ADEA, *see Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003) (Title VII); *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009), the analysis of the Title VII and ADEA claims applies equally to the Elliott-Larsen Act claims.

## A. Title VII Claim

A plaintiff alleging discrimination under Title VII may establish a prima facie case of discrimination through direct evidence of the defendant's discriminatory actions or by presenting circumstantial evidence that creates an inference of discrimination. *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 363 (6th Cir. 2010). Direct evidence is proof that, if believed, "requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (en banc) (internal quotation marks omitted). Hiser has not presented direct evidence of discrimination, nor does she argue that she has done so. Therefore, she must establish her claim of discrimination under the familiar burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973), *as modified by Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S. Ct. 1089 (1981).

To establish a prima facie case of discrimination under *McDonnell Douglas* based upon a failure to promote, a plaintiff must show that: (i) she is a member of a protected class; (ii) she applied for and was qualified for the promotion; (iii) she was considered for and denied the

promotion; and (iv) another employee with similar qualifications who was not a member of her protected class received the promotion.[3]  *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)).  The Sixth Circuit has noted that "the plaintiff's burden at [this stage] is relatively light."  *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 473 (6th Cir. 2002).  Nonetheless, the plaintiff must still establish an inference that the employment decision was motivated by unlawful discrimination.  "The salient issue in a Title VII claim of discrimination is whether the plaintiff was singled out because of her membership in a protected class, not whether she was treated less favorably than 'someone's general standard of equitable treatment.'" *Corell v. CSX Transp., Inc.*, 378 F. App'x 496, 505 (6th Cir. 2010) (quoting *Batts v. NLT Corp.*, 844 F.2d 331, 337 (6th Cir. 1988)).

If the plaintiff establishes a prima facie case, a presumption of intentional discrimination arises, and the burden then shifts to the defendant to set forth "'a legitimate, nondiscriminatory reason' . . . for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747 (1993) (emphasis in original) (citations omitted) (quoting *Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094).  If the defendant meets its burden of production, the plaintiff must then prove by a preponderance of the evidence that the defendant's conduct was motivated by unlawful discrimination rather than by the reasons articulated by the defendant.  *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 883 (6th Cir. 1996) (citing *Burdine*, 450 U.S. at 252-53, 101 S. Ct. at 1093-94).

Hiser fails to present sufficient evidence to create an inference of discrimination based upon her sex, whether under the *McDonnell Douglas* test or some other basis.  To be sure, Hiser has met

---

[3]The Court analyzes the case as a failure-to-promote case because the parties characterize it as such.  Arguably, it is a failure-to-hire case, as GLPS received both internal and external applications for the principal position.  Because the standards for a failure-to-hire case are similar to those for a failure-to-promote case, *see Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003), the distinction between hiring and promoting in this case is immaterial.

the first two elements of a prima facie case, as she is a member of a protected class (female) and she applied and was qualified for the elementary principal position. However, Hiser's prima facie case fails beyond that point.

### 1. Whether a Vacancy Existed

The parties dispute whether a vacancy ever existed – a prerequisite to a prima facie case. *See Craik v. Minn. State Univ. Bd.*, 731 F.2d 465, 469 (8th Cir. 1984) (noting that by establishing a prima facie case under *McDonnell Douglas*, a "plaintiff has eliminated the two most common legitimate reasons for failure to hire: that there was no vacancy in the job for which the plaintiff applied or that the plaintiff was not qualified for the job"); *Bowie v. Ashcroft*, 283 F. Supp. 2d 25, 31 (D.D.C. 2003) (noting that the plaintiff failed to establish a prima facie case where vacancy announcements were cancelled and the positions were never filled). GLPS argues that the principal position was never vacant because, although it was posted in anticipation of Thorson's retirement, Eckhart's internal transfer precluded any actual vacancy, making it unnecessary to re-post the position. Hiser contends that a vacancy did exist, because Thorson had announced his retirement and GLPS actively sought applicants for the position. Hiser further notes that the CBA states that "[v]acancies for all administrative positions will be communicated by posting" and "will be publicly announced as soon as possible after they are known."[4] (CBA, Art. IV § 1A.)

Both parties are correct, to an extent. That is, a vacancy existed when Thorson announced his decision to retire and GLPS posted and received applications for the position. In light of these facts, it would make little sense to conclude that there was no vacancy, even if the position was not literally "vacant" at the time, because a vacancy was certainly anticipated. Viewed in this way, Hiser applied for a vacant position. But, the posting was withdrawn, and thereafter, no applicant,

---

[4]Hiser quotes the CBA but fails to provide a specific cite pointing the Court to the quoted language. This is not helpful, because the Court is left to search the CBA on its own to find the quoted language and verify its accuracy.

including Hiser, was ever considered or denied the position. Instead, GLPS decided to eliminate an administrative position and transfer an existing administrator to the position. Hiser cites no case law, and this Court has found none, supporting the proposition that an employer violates federal anti-discrimination laws by filling a position internally with an existing employee, rather than seeking outside applicants. Furthermore, nothing in the record suggests that GLPS's decision to withdraw the posting to obtain a broader pool of applicants was motivated by unlawful discrimination. Viewed in this manner, Hiser is unable to establish the third prong of a prima facie case because after the posting was withdrawn, she was neither considered nor rejected for a vacant position. *See Dunn v. United States Postal Serv.*, No. 04-10013-BC, 2006 WL 2419928, at *4 (E.D. Mich. Aug. 22, 2006) (noting that "the Sixth Circuit requires that an applicant be 'considered for' the promotion and rejected, not just rejected" (citing *Leadbetter v. Gilley*, 385 F.3d 683, 690 (6th Cir. 2004), and *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020 (6th Cir. 2000)).[5]

### 2. Whether Hiser and Eckhart Were Similarly Situated

To the extent that Hiser argues that Eckhart's transfer constitutes a rejection, Hiser is unable to show that she and Eckhart were similarly situated. *See Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003) (noting that the fourth prong in a failure-to-promote case requires that the person outside the plaintiff's protected class be "similarly-situated"). To be similarly-situated, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). "[R]ather, . . . the plaintiff and the employee with whom the plaintiff seeks to compare

---

[5]Hiser's reliance on *Dews* is misplaced. In *Dews*, the Sixth Circuit held that in failure-to-promote cases, a plaintiff need not show that she applied for and was considered for a promotion if the employer failed to notify the plaintiff of the promotion opportunity or failed to provide a formal procedure for expressing interest in the opportunity. *Dews*, 231 F. 3d at 1022. In contrast to *Dews*, this was not a situation where Hiser could have applied for the transfer and was prevented from doing so only because she was unaware of the opportunity and failed to apply. Because the position was filled through a transfer, Hiser simply was not among those eligible for the position and could not have applied for it.

9

himself or herself must be similar in 'all of the *relevant* aspects.'" *Id.* (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (emphasis added)). Hiser and Eckhart were not similarly-situated because Eckhart was a GLPS administrator, while Hiser was not. *See Kabes v. Sch. Dist. of River Falls*, 387 F. Supp. 2d 955, 970 (W.D. Wis. 2005) (noting that the plaintiff school principal was not similarly situated to a teacher because the plaintiff was in charge of overseeing the operations of the school, while the proffered comparator was only one of many teachers responsible only for his subject matter). Similarly, Eckhart was covered by the administrators' CBA, while Hiser was not. Thus, Hiser, a teacher, was not eligible to be transferred into an administrative position.

The only evidence of sex discrimination Hiser can muster is that the principals at four of GLPS's six elementary schools – Holbrook, Delta Center, Neff, and Wacousta – were male. Three of the four principals, including Eckhart, were placed in those positions by transfer from another administrative position, while only one was a new hire. Hiser contends that this evidence establishes a pattern-or-practice of hiring and/or transferring only males into elementary principal positions, which in turn supports her claim of discrimination. Hiser is incorrect because her statistics cannot sustain her claim of individual discrimination. In *Bacon v. Honda of America Manufacturing, Inc.*, 370 F.3d 565 (6th Cir. 2004), the Sixth Circuit explained: "We subscribe to the rationale that a pattern-or-practice claim is focused on establishing a policy of discrimination; because it does not address individual hiring decisions, it is inappropriate as a vehicle for proving discrimination in an individual case." *Id.* at 575. A pattern-or-practice case generally has two stages, the first of which focuses "not 'on individual hiring decisions, but on a pattern of discriminatory decisionmaking.'" *Hohider v. United Parcel Serv., Inc.*, 574 F.3d 169, 184 (3d Cir. 2009) (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 360 n.46, 97 S. Ct. 1843, 1867 n.46 (1977)). The question of individual relief does not arise until the second stage, after the plaintiff has proved that the

employer has adopted a policy of unlawful discrimination. *Id.* (citing *Teamsters*, 431 U.S. at 361, 97 S. Ct. at 1868). Because pattern-or-practice cases by definition involve broad practices rather than individual employment decisions, individual plaintiffs may not prove their claims through the pattern-or-practice method. *Bacon*, 370 F.3d at 575. Pattern-or-practice *evidence* may still be admissible in an individual discrimination case, but only to prove "an *otherwise-viable* individual claim for disparate treat under the *McDonnell Douglas* framework." *Id.* (italics added). In the instant case, Hiser's so-called pattern-or-practice evidence is the only evidence Hiser offers to support her claim, such that it is not "otherwise viable." *See Segel v. Kimberly-Clark Corp.*, No. 09-10125, 2010 WL 3488813, at *3 (E.D. Mich. Aug. 31, 2010) ("Because this court has determined that plaintiff Segel's claim is not 'otherwise viable,' the pattern-or-practice argument is irrelevant here.").

Hiser's statistics also fail to support her claim because they are largely meaningless. First, as noted above, Hiser simply lumps together one elementary principal hire and three transfers, even though there are significant differences between the two processes: transfers apply only to those who are already administrators covered by the CBA, while new hires are selected from a group of applicants not covered by the CBA. The circumstances under which transfers and outside hirings occur can therefore vary significantly. Second, Hiser fails to provide any information that would give context to her statistics. For example, Hiser does not provide the number of women applicants for the Delta Center position, the size of the applicant pool, etc. Regarding transfers, Hiser fails to indicate whether any women were eligible or even sought a transfer, nor does she provide any information about why the positions were filled by transfer instead of posting. *See Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 963 (11th Cir. 1997) ("Statistics without an analytic foundation are virtually meaningless." (internal quotation marks omitted)); *Lilly v. Harris-Teeter Supermarket*, 720 F.2d 326, 339 (4th Cir. 1984) (stating that "the company's asserted statistics as to the percentage

of black drivers are meaningless in the absence of data as to the pool of applicants for the positions").

Finally, Hiser's statistics fail to consider GLPS's evidence that it has hired roughly numbers of male and female principals over the last fifteen years. Moreover, Matthews' predecessor, Marsha Wells, and Peasley, one of two Assistant Superintendents, were both female.

### 3. Non-Discriminatory Reason

Assuming, *arguendo*, that Hiser could establish a prima facie case of discrimination, she cannot show that GLPS's non-discriminatory reason – its decision to eliminate an administrative position and fill the Wacousta principal position through a transfer in order to address a budget shortfall – is pretext. When there is no direct evidence of discrimination, a plaintiff may establish pretext by showing "'that the employer's proffered explanation is unworthy of credence.'" *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 667 (6th Cir. 2000) (quoting *Burdine*, 450 U.S. at 256, 101 S. Ct. at 1095). Pretext can be established in this way by showing that: (1) the employer's reason has no basis in fact; (2) the proffered reason did not actually motivate the employer's conduct; or (3) the proffered reason was insufficient to warrant the challenged conduct. *See Dews*, 231 F.3d at 1021.

Hiser concedes that the district faced significant financial issues. She contends, however, that her evidence shows that those issues did not necessitate the district's decision to transfer Eckhart and should not have played any role in filling the Wacousta principal position.

Hiser first argues that GLPS's decision to transfer Eckhart is pretext because GLPS would have saved more money by hiring a new principal, such as Hiser, instead of transferring Eckhart into the position. Hiser notes that Eckhart was brought in at the higher paying Step 5, whereas a new hire would have started at a Step 1. Hiser asserts that because GLPS never considered the cost savings of filling the position with a new hire rather than by transfer, GLPS's reason is suspect.

Even if GLPS would have paid a new hire less than it paid Eckhart, Hiser fails to present any evidence or analysis showing that the overall cost of hiring a new principal, which would have included the costs associated with laying off Eckhart, were less than the costs of transferring Eckhart.[6]  Moreover, even *if* GLPS could have saved more money, as Hiser asserts, there is no dispute that GLPS saved money by eliminating an administrative position and transferring Eckhart to the Wacousta principal position.  In short, Hiser has offered no valid reason for concluding that GLPS's decision was not the product of reasonable business judgment.  *See Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996) ("The law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with.").

Hiser next argues that GLPS's reliance on the CBA to support its decision is evidence of pretext because the CBA required that Eckhart be laid off.  She argues that as the least senior administrator, Eckhart should have been laid off because the CBA provides that if a layoff is necessary, "'[t]he administrator employed in the classification being reduced or eliminated, who holds the least bargaining unit seniority in that classification, <u>shall</u> be laid off.'" (Pl.'s Resp. Br. at 14 (quoting CBA Art. V, § 6 at 6 (emphasis in original).)  But, no layoff was necessary.  GLPS, acting within its authority under the CBA's management rights clause, eliminated one position and filled the Wacousta position by transferring Eckhart.  Hiser's real argument is that Eckhart was not qualified for the position.  Contrary to Hiser's suggestion, however, Davis did not testify that Eckhart was not qualified for the position.  Rather, Davis stated that Eckhart "didn't meet the elementary experience" for the posting, but "[h]e did have the administrative degree." (Davis Dep. at 142.)  Davis further testified: "The posting is a guideline.  And our district has a history of interviewing people that don't always meet every single piece of that posting and hiring people

---

[6]Even if GLPS sought to fill the position through posting, and assuming, as Hiser does, that Hiser would have been the successful candidate, GLPS would have also had to fill Hiser's vacant position, which would have added to the costs associated with a new hire.

13

sometimes that don't." (*Id.* at 142-43.) In light of Eckhart's substantial prior experience as a middle and high school principal, Hiser's argument cannot be that Eckhart was not qualified (because he was), but instead that he did not meet all of the requirements of the job posting. Yet, if failing to meet all of the requirements of the posting rendered an applicant unqualified, Hiser herself would have been unqualified because she lacked the required masters degree.

Hiser also contends that GLPS lacked authority under the CBA to transfer Eckhart in the manner it did, because the CBA only provides for voluntary transfers, where the administrator requests to be transferred, and involuntary transfers. (CBA Art. IV, § 2.) Hiser argues that Eckhart's and the other administrators' transfers did not squarely fit within either type of transfer, and that GLPS's deviation from the CBA in order to retain Eckhart in the system is evidence of pretext. The Court disagrees. Contrary to Hiser's allegation, the transfers at issue were either voluntary – where the administrator was requested to transfer and agreed to do so – or involuntary – where the administrator, in reality, had no choice but to agree to the transfer or face layoff. But whether the transfers fit neatly within the circumstances described in CBA is irrelevant, because nothing in the CBA limits the circumstances under which GLPS may transfer administrators. In fact, the CBA gives GLPS broad rights, including the right to "transfer . . . all personnel" which "shall be limited only by the specific and expressed terms of contractual agreements involving the Board." (CBA, Art. II.) Moreover, even if the transfers did not technically comply with the CBA, there is no evidence that GLPS misapplied the CBA for a discriminatory purpose. *See Anderson v. Potter*, 723 F. Supp. 2d 368, 376 (D. Mass. 2010) ("At most, Anderson has established a misapplication of the CBA and related rules – a mere 'business error.' Anderson has not provided any evidence to suggest that the USPS made the business error because it was motivated by discrimination or that the business error was a cover for discrimination.").

14

In her final argument, Hiser contends that she can show pretext because a jury could conclude that a reasonable employer would have found her better qualified than Eckhart. This argument is misplaced because it does not square with the facts of the case. GLPS did not reject Hiser after comparing her qualifications to those of Eckhart. In fact, GLPS did not consider any applicant's qualifications as part of its decision to transfer Eckhart. Hiser's claim, therefore, cannot be that GLPS chose a less-qualified candidate, but instead must be that its decision to fill the principal position through an internal transfer rather than by posting was motivated by discrimination. As set forth above, Hiser has failed to present any evidence to support such a claim. Thus, there is no reason for the Court to compare qualifications.

**B.     ADEA Claim**

Hiser's ADA claim, like her Title VII claim, relies solely on circumstantial evidence and, therefore, is also properly analyzed under the *McDonnell Douglas/Burdine* burden-shifting framework. *See Harris v. Metro. Gov't of Nashville & Davidson Cnty.*, 594 F.3d 476, 485 (6th Cir. 2010). In fact, a failure-to-promote claim under the ADEA employs the same test for a prima facie case as a failure-to-promote claim under Title VII. *See Grizzell v. City of Columbus Div. of Police*, 461 F.3d 711, 719 (6th Cir. 2006). And, because Hiser's ADEA claim essentially mirrors her Title VII claim, the Court need not conduct a separate analysis because her ADEA claim fails for the same reasons. The only additional issue the Court must address is whether comments by Matthews and Davis can support an inference of age discrimination. In particular, Hiser claims that Matthews' reference to Eckhart as a "nice young man with young children" in December 2008 and Davis' comment to Hiser during a 2002 interview that she was "the most mature candidate to interview" suffice to create an inference of age discrimination.

15

On the issue of an employer's age-related remarks as evidence of discriminatory animus, the

Sixth Circuit has stated:

> In age discrimination cases, this court has examined statements allegedly showing
> employer bias by considering whether the comments were made by a decision
> maker or by an agent within the scope of his employment; whether they were related to the
> decision-making process; whether they were more than merely vague, ambiguous,
> or isolated remarks; and whether they were proximate in time to the act of
> termination.

*Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994).  Considered in light of these

factors, Matthews' and Davis' statements do not support an inference of age discrimination.

Regarding Davis' "mature" comment, Davis made the comment while acting as a decision-maker

during the course of a job interview.  The comment does not support Hiser's claim, however,

because it was made almost six years before the employment decision at issue in this case.  *See*

*Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1026 (6th Cir. 1993) (statements made almost a year before

the plaintiff's layoff were not probative of age discrimination); *Read v. BT Alex Brown Inc.*, 72 F.

App'x 112, 120 (5th Cir. 2003) (age-related comment by decision-maker with authority over the

plaintiff's continued employment was not probative of discrimination because it was made almost

three years before the plaintiff's termination).  Matthews' comment that Eckhart was a "nice young

man," although made closer in time to the relevant employment decision, was an isolated comment

neither directed at Hiser nor related to the employment decision.  *See Peters*, 285 F.3d at 478 ("The

record does not evidence any remarks being directed at Peters that would be related to Lincoln's

decision-making process in terminating Peters as the Corporate Controller."); *Merrick v. Farmers*

*Ins. Group*, 892 F.2d 1434, 1438 (9th Cir. 1990) (holding that decision-maker's comment that the

person selected for the promotion over the plaintiff was "a bright, intelligent, knowledgeable young

man" was a stray remark not probative of whether the promotion decision was based on age).  Thus,

neither comment supports an inference of age discrimination.

16

C.    **Spoliation of Evidence**

Lastly, Hiser argues that she is entitled to an adverse inference based on destruction of evidence.  In particular, she notes that Peasley and Davis both testified that they may have destroyed files containing documents relating to Eckhart's appointment to Wacousta principal when they moved offices in 2010 – after the date Hiser filed her charge of discrimination with the EEOC. Hiser further notes that the fact that GLPS produced only one e-mail relating to her claims and GLPS' defenses in this case, even though e-mail is the primary form of communication in the district, as well as GLPS' e-mail retention policy, suggests the destruction of evidence relevant to Hiser's claims.

For purposes of determining whether sanctions should be imposed for spoliated evidence, this Court must apply federal law.  *Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009).  The Sixth Circuit has held that a party seeking an adverse inference based on spoliation must show that: (1) the party having control over the evidence had a duty to preserve it; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was relevant to the party's claim or defense.  *Beaven v. United States Dep't of Justice*, 622 F.2d 540, 553 (6th Cir. 2010).  Assuming that Hiser  has made the first two showings, she has failed to present any credible proof, beyond mere conjecture, that any destroyed document or deleted email would have been relevant to her claims.  Moreover, Peasley states in an affidavit that none of the documents disposed of during the move concerned the selection process for the Wacousta principal position, and most communications  of a substantive nature between GLPS administrators occur in person rather than by e-mail, primarily due to the close proximity of their offices.  (Peasley Aff. ¶¶ 3-5; *see also* Peasley Dep. at 65 ("My office was next door to Mr. Davis's and down the hall from Dr. Matthews, so it was typically conversations that we were having in person.").)  Moreover, even if Hiser were

17

entitled to an adverse inference, given the absence of any other evidence creating an inference of discrimination, such inference alone would not allow Hiser to avoid summary judgment. *See Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 797 (6th Cir. 2006) (noting that "even if an adverse inference was warranted it could not satisfy Plaintiff's burden of production" given the other evidence in the record).

## IV. CONCLUSION

In sum, while Hiser might be able to persuade a jury that she was treated unfairly, the issue in this case is whether GLPS discriminated against Hiser on the basis of her gender or age. Because there is no genuine issue of material fact relating to Hiser's claims, summary judgment in favor of GLPS is proper. Therefore, the Court will grant GLPS's motion and dismiss Hiser's claims.

An Order consistent with this Opinion will be entered.


Dated: September 12, 2011                    _____/s/ Gordon J. Quist_____
                                                    GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE